UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC, et al., ) | CASE NO. 5:11CV2264 |
| ) | |
| Plaintiffs, ) | MAGISTRATE JUDGE GEORGE J. |
| ) | LIMBERT |
| v. ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| LEYLAND CO., LLC d/b/a HOOK, ) | |
| LINE & DRINKERS, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on three motions. First, the motion for summary judgment was filed on behalf of Plaintiffs, Broadcast Music, Inc. ("BMI"), MJ Publishing Trust, Songs of Universal, Inc., Welsh Witch Music, ABKCO Music, Inc., Sony/ATV Songs LLC, Unichappell Music, Inc., Sloopy II Inc., Cyanide Publishing, Painted Desert Music Corporation, and Embassy Music Corporation on August 2, 2012. ECF Dkt #27. Defendants, Leyland Co., LLC ("Leyland Co."), and Ronald Leyland ("Mr. Leyland") filed an opposition brief on October 1, 2012. ECF Dkt. #34. Plaintiffs filed their reply on October 12, 2012. ECF Dkt. 36.

Second, the motion to dismiss was filed on behalf of Mr. Leyland on September 13, 2012, ECF Dkt. #31. Plaintiffs filed their opposition brief to the motion to dismiss on September 27, 2012, ECF Dkt. # 32.

Third, the Motion to Withdraw admissions was filed on behalf of both Mr. Leyland and Defendant, Leyland Co., LLC ("Leyland Co.") on October 1, 2012. ECF Dkt. #33. Plaintiffs filed their opposition brief to the motion to withdraw admissions on October 12, 2012. ECF Dkt. #35.

For the following reasons, Defendants' motion to withdraw admissions is denied,  Mr. Leyland's motion to dismiss is denied, and Plaintiff's motion for summary judgment is granted.

### I. MOTION TO WITHDRAW ADMISSIONS

For its factual basis, Plaintiffs' motion for summary judgment relies almost exclusively on facts deemed admitted due to Defendants' failure to respond to Plaintiff's Request for Admissions and Production of Documents.   Plaintiffs commenced this action for copyright infringement on October 21, 2011.  Defendants' Answer was filed on December 7, 2011. The Plaintiffs' First Request for Admissions, Interrogatories and Request for Production were served on June 7, 2012. See, Declaration of Ronald H. Isroff ("Isroff Declaration"), ¶7.  Defendants' counsel was reminded of her failure to respond to the discovery requests on July 12, 2012, however, no response was filed. *Id.*

Rule 36(a)(3) of the Federal Rules of Civil Procedure, in relevant part, provides that:  "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or by the party's attorney."  Moreover, "[u]nder Rule 36(b), a request for admissions which is not responded to within the applicable time period 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission.' " *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir.1997).  Pursuant to Rule 36(a) a party may seek to request an admission even where the request is "dispositive of the entire case." *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir.1979) (citations omitted).

Courts in this district routinely enforce the civil rule.  See, *Tracy v. Heffron*, No. 86-2007, No. 86-2007, 1987WL 37916, at *1 (6th Cir. July 6, 1987)(the district court correctly deemed the

2

requests for admissions to have been admitted by plaintiff because he did not respond to them pursuant to Rule 36(a)); *Hitachi Medical Sys. Am., Inc. v. Branch*, No. 5:09CV1575, 2011 WL 1326358, at *3 (N.D. Ohio Apr. 5, 2011)(Defendants' failure to respond within 30 days meant that the requests for admission are deemed admitted by default); *Jasar Recycling, Inc. v. Major Max Management Corp.*, No. 4:08CV2830, 2010WL 395212, at * 3 (N.D. Ohio Jan. 22, 2010)(matters deemed admitted from a failure to respond to requests for admissions can serve as a basis for a summary judgment motion.)  However, a district court may, at its discretion, permit the filing of an answer to a request for admission that would otherwise be untimely. See e.g. *Dupuis v. City of Hamtramck*, 2008 WL 4615655 (E.D.Mich.2008); *Local Union No. 38, Sheet Metal Workers' Int''l Ass'n, AFL–CIO v. Tripodi*, 913 F.Supp. 290, 293–94 (S.D.N.Y.1996); *United States v. Turk*, 139 F.R.D. 615, 617 (D.Md.1991); see also, *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1310, 1312 (8th Cir.1983).

In their motion, Defendants argue that the dispositive motion deadline in this case was extended a number of times, and, as a result, they misunderstood that the time for filing their written answer or objection was continued as well.  This explanation is unconvincing for two reasons. First and foremost, the civil rule plainly provides that the response time is statutory.  Second, the discovery deadline (June 11, 2012) and thrice-extended dispositive motion deadline (August 2, 2012) had both expired several months prior to the date that Defendants filed their motion to withdraw admissions (October 1, 2012).  Accordingly, Defendants have failed to articulate good cause for their failure to respond to the request for admissions and production of documents.

3

Defendants failed to respond to Plaintiffs' Request for Admissions within time provided by Fed. R. Civ. P. 36 or at any time thereafter.[1] As a result of Defendants' failure to respond to the Requests for Admissions, all of the Requests are deemed to have been admitted pursuant to the Civil Rule, and Defendants' motion to withdraw admissions is denied.

II.     MOTION TO DISMISS

The standard for reviewing a complaint subject to a motion to dismiss challenge under Rule 12(b)(6), failure to state a claim upon which relief may be granted, requires that the court determine if the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (clarifying the "plausibility" standard articulated in *Twombly* ).

The "plausibility" standard, as articulated in *Ashcroft v. Iqbal*, provides that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Under this standard, the fact claims made in the contested pleading "must be enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555. (emphasis added). "The court must 'accept all the ... factual allegations as true and construe the complaint in the light most favorable to the Plaintiff [ ].' " *Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 384 (6th Cir.2009)(omission in original)(citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009)).

---

[1] Defendants likewise failed to respond to Plaintiff's Interrogatories and Requests for Production.

4

In his motion to dismiss, Mr. Leyland cites R.C. 1705.48(B) for the proposition that, in Ohio, members or managers of a limited liability company are not personally liable to satisfy any judgment or obligation of the limited liability solely by reason of being a member of the limited liability company. Here, Mr. Leyland's alleged liability is not predicated solely upon his role as a member/manager of Leyland Co., but as an infringer along with Leyland Co., since he had the right and ability to supervise the infringing activity and had a direct financial interest in such activity. See 17 U.S.C. §501(a); see *infra* at p. 11-13. Accordingly, Mr. Leyland's motion to dismiss is denied.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. STANDARD OF REVIEW

Summary judgment should be granted "where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Johnson v. Karnes*, 398 F.3d 868, 870-873 (6th Cir. 2005). The Court must decide, "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

A party seeking summary judgment bears the initial burden and must inform the court of the basis for its motion. *Celotex*, 477 U.S. at 323. Further, the moving party must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" which demonstrate the absence of a genuine issue of material fact. **Id.** The

5

moving party must make a showing that no reasonable jury could find other than for the moving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party satisfies its burden, the nonmoving party must demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993), see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present "some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp.*, 822 F.2d at 1435, see *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 288-290 (1968).

### B. FACTS

The following facts are undisputed for the purposes of the motion for summary judgment. BMI is a "performing rights society" which licenses the right to publicly perform copyrighted musical works on behalf of the copyright owners of these works. 17 U.S.C. §101. The other plaintiffs are the copyright owners of various compositions that are the subject of this lawsuit. See, Declaration of Kerri Howland-Kruse, BMI's Assistant Vice President, Legal attached hereto as Exhibit 1, ("Howland-Kruse Declaration"), ¶4. Under the Copyright Act, the owners of copyrights in musical compositions possess the exclusive right to authorize public performances of their works. 17 U.S.C. §106(4).

Through agreements with copyright owners such as music publishing companies and independent composers, BMI acquires non-exclusive public performance rights. Howland-Kruse Declaration, ¶2. BMI has acquired such rights from each of the other Plaintiffs in this action. Howland-Kruse Declaration, ¶5. BMI, in turn, grants to music users such as Broadcasters and the

owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements." Howland-Kruse Declaration, ¶2. These agreements have been recognized as the most practical means to exploit copyright owners' public performance rights. See, *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc*., 441 U.S. 1 (1979); *Broadcast Music, Inc. v. Moor-Law, Inc*., 484 F. Supp. 357 (D. Del. 1980), *Broadcast Music, Inc. v. Moor-Law, Inc*., 527 F. Supp. 758 (D. Del. 1981), aff'd without published opinion, 691 F. 2d 491 (3d Cir. 1982)("*Moor-Law II*").

BMI operates as a non profit-making performing rights organization. It distributes all of the money it collects in license fees from music users – licensees such as the restaurants, hotels and nightclubs referenced above – as royalties to its affiliated publishers and composers, after the deduction of operating expenses and reasonable reserves. Howland-Kruse Declaration, ¶3.

The Defendants each individually own and operate Hook, Line & Drinkers located at 530 Portage Lakes Drive, Akron, Ohio 44319-2258 ("Establishment" or "Hook, Line & Drinkers") that regularly features performances of live and recorded music. See Exhibit B to Howland-Kruse Declaration, Plaintiffs' First Request for Admissions ("Admissions"), Nos. 1, 4.

Between November 2009 and May 2011, BMI repeatedly informed Defendants of the need to obtain permission for public performances of copyrighted music. Declaration of Lawrence E. Stevens, BMI's Assistant Vice President, General Licensing ("Stevens Declaration"), ¶¶2-6, 12. BMI offered to enter into a license agreement with Defendants, but Defendants failed to enter into a license agreement. Stevens Declaration, ¶9.

On September 27, 2010, BMI instructed the Defendants to cease public performances of music licensed by BMI. Stevens Declaration, ¶6. Nevertheless, public performances of BMI

licensed music continued at Hook, Line & Drinkers after that date and performances of songs owned by the Plaintiffs were chronicled by a BMI investigator on March 18, 2011. Stevens Declaration, ¶10. Specifically, BMI's investigator generated a written report of the songs played at Hook, Line & Drinkers on those nights, which includes the songs that are the subject of this infringement action. See Exhibit A to the Stevens Declaration, Certified Infringement Report. Neither of the Defendants was licensed by any of the Plaintiffs to publicly perform any of their musical compositions on the evening of March 18, 2011 and continuing to the early hours of March 19, 2011. Req. for Adm. Nos. 21-22.

There is no evidence to controvert the statements in the Certified Infringement Report that the songs alleged to have been performed at Hook, Line & Drinkers on the evening of March 18, 2011 and the early hours of March 19, 2011 were performed. Req. for Adm. Nos. 10-12. The estimated occupancy of Hook, Line & Drinkers was 200 people, and an estimated 150 people were present that evening. Certified Infringement Report at p. 1. The cover charge that evening was $5.00 per person. *Id.*

On the evening of March 18, 2011 and the early morning of March 19, 2011, Leyland Co. operated and maintained the Establishment, and, therefore, had the right and ability to direct and control the activities of the Establishment, and had a direct financial interest in the Establishment. Req. for Adm. Nos. 1-3. Likewise, Mr. Leyland operated and maintained the Establishment on the evening of March 18, 2011 and the early morning of March 19, 2011, and, therefore, had the right and ability to direct and control the activities of the Establishment, had the right and ability to supervise the persons employed by Hook, Line & Drinkers, and had a direct financial interest in the

8

Establishment on the evening of March 18, 2011 and the early morning of March 19, 2011. Req. for Adm. Nos. 4-8.

### C. LAW AND ANALYSIS

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work. 17 U.S.C. §106(4). Any person who violates this exclusive right is an infringer. 17 U.S.C. §501(a). It is undisputed that Defendants sponsored the public performance of Plaintiffs' copyrighted musical compositions without authorization in violation of the Copyright Act. Accordingly, Plaintiffs seek judgment as a matter of law, statutory damages, injunctive relief and attorneys' fees and costs. See 17 U.S.C. §504 (c), 502 and 505.

In order to prevail in an action for copyright infringement, Plaintiffs must establish the following five elements:

1. Originality and authorship of the copyrighted works involved;

2. Compliance with the formalities of the Copyright Act;

3. Proprietary rights in the copyrighted works involved;

4. Public performance of the compositions involved; and

5. Lack of authorization for public performance.

*Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc.*, 657 F. Supp. 1016 (S.D. Miss. 1987); *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629 (D.N.H. 1986); *Milena Music v. Gotauco*, 551 F. Supp. 1288 (D.R.I. 1982); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 90 (D. Conn. 1980).

The first three elements are established in the Howland-Kruse Declaration. The Howland–Kruse Declaration, referring to the Schedule attached to the Complaint, sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration number. Howland-Kruse Declaration, ¶4. The Declaration is supplemented with copies of each registration certificate and subsequent documentation relating to the chain of ownership of the songs. See, Exhibit A to the Howland-Kruse Declaration. In addition, by failing to respond to Plaintiffs' First Request for Admissions, Nos. 13, 15, 17 and 19, Defendants do not dispute the elements of originality, proper registration and proprietary interest. Defendants are also deemed to have admitted that they have no evidence to rebut the Plaintiffs' proof on these three points by failing to respond to Plaintiffs' First Request for Admissions, Nos. 14, 16, 18 and 20.

The fourth element, public performance, is established by the Certified Infringement Report of Robert Allman who was hired by BMI for the purpose of visiting the Establishment and making an audio recording and a written report of the musical compositions which were performed at Hook, Line & Drinkers. Stevens Declaration, ¶11. It is clear that performance of the music may be established by such certification. 28 U.S.C. §1746; *Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc.*, 657 F. Supp. at 1020; *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629.

By failing to respond to the Plaintiffs' First Request for Admissions, numbers 10, 11 and 12, Defendants have admitted that they do not maintain playlists of live performances and have no specific recollection (and thus do not contest) of the performance of the compositions listed on the Schedule attached to the Complaint. They further admit that they have no evidence that these particular BMI-licensed compositions were not performed. See Admissions, Nos. 10-12; see also *Broadcast Music v. Pine Belt Investment Developers, Inc*., 667 F. Supp. at 1020.

The fifth element, lack of authorization, is similarly established in the Stevens Declaration and likewise undisputed by Defendants. The Stevens Declaration establishes that Defendants did not enter into a BMI license agreement, nor were the performances otherwise authorized. See, Stevens Declaration, ¶9 and Admissions, No. 22. Moreover, Defendants continued to publicly perform copyrighted music without permission after being instructed to cease, as indicated by the Certified Infringement Report.

By failing to respond to the request for admissions, Leyland Co. admitted that it had the ability to direct and control the activities and supervise the employees of Hook, Line & Drinkers and had a direct financial interest in Hook, Line & Drinkers. Therefore, Leyland Co. is liable for infringing acts committed at the Hook, Line & Drinkers establishment. See, *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance) (citing *Twentieth CenturyMusic Corp. v. Aiken*, 422 U.S. 151, 157 (1975)).

Similarly, by failing to respond to the request for admissions, Mr. Leyland admitted that he had the ability to direct and control the activities and supervise the employees of Hook, Line & Drinkers and had a direct financial interest in Hook, Line & Drinkers. Therefore, Mr. Leyland is a corporate officer directly controlling Hook, Line & Drinkers and is liable for the infringing acts committed at Hook, Line & Drinkers. See, *Sailor Music*, 640 F. Supp. at 633 (a corporate officer is liable as a joint tortfeasor in a copyright infringement action where the officer was the dominant force in the corporation and determined the policies that resulted in the infringement).

17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 121 . . . is an infringer of the copyright . . ."

11

Interpreting the equivalent section under the Copyright Act of 1909, the Second Circuit Court of Appeals stated: "Although the Act does not specifically delineate what kind or degree of participation in an infringement is actionable, it has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition." *Gershwin Publ'g Corp. v. Columbia ArtistsMgmt., Inc.*, 443 F. 2d 1159, 1161-62 (2d Cir. 1971).

> More pointedly, the Second Circuit has observed that:
>
> [T]he cases are legion which hold the dance hall proprietor liable for the infringement
> of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income. He is liable whether the band leader is considered, as a technical matter, an employee, or an independent contractor and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.

*Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc*., 316 F. 2d 304, 307 (2d Cir. 1963); *Broadcast Music, Inc. v. The Peppermint Club, Inc*., 229 U.S.P.Q. 534, 537-38 (N.D. Ohio 1986).

As the sponsor of the public performances, Leyland Co. is liable for infringement at Hook, Line & Drinkers.  See *Broadcast Music, Inc. v. Niro's Palace, Inc*., 619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance)(citing *Twentieth CenturyMusic Corp. v. Aiken*, 422 U.S. 151, 157 (1975)).  Leyland Co., is similarly responsible for the tortious actions of their employees under the doctrine of respondeat superior.  *Wihtol v. Crow*, 309 F.2d 777, 782-783 (8th Cir. 1962); M. Witmark & Sons v. Calloway, 22 F.2d 412, 414 (D.Tenn. 1927). See, generally F. Harper, F. James & O. Gray, The Law of Torts, §26.3 (2d ed. 1986). See, also Nimmer on Copyright, §12.04[A].

Furthermore, "[a] corporate officer is jointly and severally liable, with his corporation for copyright infringement if he (1) 'had the right and ability to supervise the infringing activity', and

12

(2) 'has a direct financial interest in such activities'." *The Peppermint Club, Inc.*, 229 USPQ at 538, (quoting *Warner Bros., Inc. v. Lobster Pot, Inc.*, 582 F. Supp. 478, 483 (N.D. Ohio 1984)). See also *Nick-O-Val Music Co. v. P.O.S. Radio, Inc.*, 656 F. Supp. 826, 828 (M.D. Fla. 1987); *Milene Music, Inc.*, 551 F. Supp. at 1295; *Boz Scaggs Music,* 491 F. Supp. at 913-14. Mr. Leyland operated, had the right and ability to direct and control the activities of and supervise the employees of Hook, Line & Drinkers, and had a direct financial interest in Hook, Line & Drinkers. See Admissions, Nos. 6-8. Consequently, Mr. Leyland is individually liable for the infringement.

### D.  INJUNCTIVE RELIEF, DAMAGES, AND ATTORNEY'S FEES

Plaintiffs request permanent injunctive relief, statutory damages for each of the claims of infringement, costs and reasonable attorney's fees.  Each request is addressed separately below.

#### 1.  INJUNCTIVE RELIEF

17 U.S.C. §502(a) provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright."  The Northern District of Illinois observed:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists. . . The threat of continuing infringement is substantial in the present case. Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

*Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 963 (N.D. Ill. 1985). Here, like *Niro's*, Defendants willfully disregarded the copyrights held by the Plaintiffs, as well as oral and written notice and continued to perform copyrighted musical compositions for years with no license to do so.

Even where Defendants have secured licenses after the time of the infringements, injunctive relief has been awarded.  For instance, in *Milene Music*, the defendants were licensed by the time

13

the court considered the plaintiffs' Motion for Summary Judgment. The Court granted injunctive relief stating that "[t]he history of defendants' actions . . .exhibits an unfortunate tendency conveniently to ignore, from time to time . . . the plaintiffs' proprietary rights." *Milene Music v. Gotavco*, 551 F. Supp. at 1295-1296. See, also *Sailor Music*, 640 F. Supp. at 634-35.

Here, Defendants, as of yet, are unlicensed and continue to offer unauthorized performances of Plaintiffs' music. The issuance of an injunction is at the Court's discretion, but "permanent injunctions are typically granted in situations involving unlawful infringement of copyrights in musical compositions 'because of the strong probability that unlawful performances of other copyrighted material will occur.'" *Disney Enterprises v. Farmer*, 427 F.Supp.2d 807, 819 (E.D.Tenn.2006) (quoting *Sailor Music v. IML Corp.*, 867 F.Supp. 565, 570 (E.D.Mich.1994)). Therefore, injunctive relief in this case is both appropriate and necessary. See *Superhype Publ'g, Inc. v. Vasiliou*, 838 F.Supp. 1220, 1226 (S.D.Ohio 1993)(noting that a showing of past infringement and a substantial likelihood of future infringement entitles a copyright owner to a permanent injunction).

### 2. STATUTORY DAMAGES

The Copyright Act empowers a plaintiff to elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement in lieu of an award representing the Plaintiffs' actual damages and the Defendant(s)' profits. 17 U.S.C. § 504(c)(1). Furthermore, "[i]n a case where the copyright owner sustains the burden of proving. . .that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

District courts have wide discretion in setting damages within the statutory range set forth in § 504(c)(1). *Cross Keys Pub. Co., Inc. v. Wee, Inc.*, 921 F.Supp. 479, 481 (W.D.Mich.1995) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231-32, 73 S.Ct. 222, 97 L.Ed. 276 (1952)). Courts may consider several factors in determining statutory damages "including: the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, and the infringers' state of mind whether willful, knowing, or merely innocent." *Id.* In awarding statutory damages, courts may also consider "the goal of discouraging wrongful conduct." *Id.*

Merely awarding statutory damages in the amount of the profits from a copyright infringement would do little to discourage infringers and it would not be "an effective sanction for enforcement of the copyright policy." *Id.* The range of statutory damages "formulated after long experience, not merely compels restitution of profit and reparation for injury but is also designed to discourage wrongful conduct." *Id.* (citing *F.W. Woolworth*, 344 U.S. at 233, 73 S.Ct. 222). "[A] plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.' " *Peer Intern. Corp. V. Pausa Records*, *Inc.*, 909 F.2d 1332, 1337 (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)). Courts have recognized a copyright owner's option to request statutory damages "when neither the owner's actual damages nor the infringer's profits are ascertainable or are difficult to calculate." *United Features Syndicate, Inc. v. Spree, Inc.*, 600 F.Supp. 1242, 1245 (E.D.Mich.1984). The option of electing statutory damages is especially appropriate where "the information needed to establish an exact measure of actual damages is within the infringers' control

15

and often is not fully disclosed." *Microsoft Corp. v. Sellers*, 411 F.Supp.2d 913, 920 (E.D.Tenn.2006).

When BMI first contacted the Defendants on November 5, 2009, Hook, Line & Drinkers was asked to execute a license agreement. Stevens Declaration, ¶3. Despite the numerous calls and letters, to date, BMI has not received a license agreement or any license fees from Defendants. Stevens Declaration, ¶4. The court, in its discretion, may also augment the amount of statutory damages awarded to reflect the degree of culpability exhibited by Defendants. See *Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.*, 606 F. Supp. 554, 555-57 (D.C.N.Y. 198). "Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful." *Prater Music v. Williams*, 5 USPQ2d at 1815; accord *International Korwin Corp. v. Kowalczyk*, 855 F. 2d. 375 (7th Cir. 1988); *Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F. Supp. at 829; *Rodgers*, 623 F. Supp. at 892.

The record supports a finding that the Defendants deliberately violated the Plaintiffs' rights. Between November 2009 and May 2011, BMI sent letters to Defendants and repeatedly advised them of the need to enter into a license agreement. Stevens Declaration at ¶¶3, 5-6, 12. BMI representatives telephoned Defendants on sixty-six (66) occasions. Stevens Declaration, ¶8. On September 27, 2010, BMI sent Defendants an overnight letter informing them that they must immediately cease unauthorized performances of BMI-licensed music, with multiple follow up letters. Stevens Declaration, ¶6. Despite BMI's efforts, a BMI investigator made an audio recording and a written record of the performance of nine (9) BMI-licensed compositions after that date. Certified Infringement Report, ¶11. Defendants ignored BMI's request for a license agreement and defied BMI's directive to cease and desist further infringing activities. Therefore, Defendants' conduct was willful.

Courts considering awards of statutory damages have recognized that awards in the range of $2,000 to $4,000 per infringement are appropriate in cases where the infringement resulted from deliberate indifference toward copyright laws. See *Broad. Music, Inc. v. CDZ, Inc.*, 724 F.Supp.2d 930, 939 (C.D. Ill. 2010)(awarding $4,000 for each of thirteen counts of infringement, finding the award "well within the statutory range"); *Broad. Music, Inc. v. Entertainment Complex, Inc.*, 198 F.Supp.2d 1291 (N.D. Ala. 2002)(awarding $3,909.09 for each of eleven counts of copyright infringement); *Sailor Music*, 867 F.Supp. at 570 (awarding statutory damages of $2,000 per song played at a nightclub without a license).[2]

Accordingly, the Court awards damages in the amount of Eighteen Thousand Dollars ($18,000.00), which constitutes an award of Two Thousand Dollars ($2,000.00) for each of the nine infringements. This amount should be sufficient both to compensate Plaintiffs for their loss and to deter future violations by Defendants.

### 3. ATTORNEY'S FEES AND COSTS

Title 17 U.S.C. §505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Copyright Act permits an award of "reasonable attorney's fees to the prevailing party" in a copyright infringement case. 17 U.S.C. § 505; *Balsley v. LFP*, 691 F.3d 747 (6th Cir.2012);

---

[2]The Court notes that *Sailor Music, supra,* was decided before Section 504(c) of the Copyright Act was amended to reflect a minimum statutory damage award of $750 per infringement, and a maximum statutory damage award of $30,000 per infringement.

17

Fed.R.Civ.P. 54(d)(2)(B)(ii). "The grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.' " *Id.* citing *Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir.2008).  However, the decision to grant attorney's fees remains within the trial court's discretion. 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).  In determining whether a prevailing plaintiff is entitled to attorney's fees under this provision of the Copyright Act, the Court considers several nonexclusive factors, commonly referred to as the "*Fogerty* factors," which are: "frivolousness, motivation, objective unreasonableness (factual and legal), and the need to advance considerations of compensation and deterrence." *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir.2009) (citation omitted).

In the present case, Defendants have intentionally ignored their obligation under the Copyright Act and have forced Plaintiffs to engage in litigation to enforce their rights. Accordingly, Plaintiffs should be awarded full attorneys' fees.  The Copyright Act expressly provides that the court "in its discretion may allow the recovery of full costs by or against any party ..."  17 U.S.C. §505. Under this provision, the courts have allowed full recovery by the prevailing party of its reasonable costs. See, *Milene Music, Inc. v. Gotauco,* 551 F. Supp. at 1297. There are no factors which would militate against an award of Plaintiffs' costs in the present case. Such an award is particularly appropriate in light of Defendants' deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act.

The Isroff Declaration sets forth attorneys' fees in the amount of $13,156.50 and expenses in the amount of $759.04, for a total of $13,915.54. According to the Isroff declaration, Attorney Isroff's hourly rate in 2011 was $455.00, and his hourly rate in 2012 was $470.00.  "It is well settled law that the 'lodestar' approach is the proper method for determining the amount of reasonable

attorney's fees." *Building Svcs. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir.1995). The lodestar approach multiplies the number of hours reasonably spent by a reasonable hourly rate. *Id.* There is a "strong presumption" that this figure is a reasonable fee. *Id.*

However, Attorney Isroff does not offer any evidence that his hourly rates are reasonable, that is, that his rates are consistent with the prevailing market rates in the Northern District of Ohio. In determining reasonable fees, the Sixth Circuit has instructed district courts to consider the time and labor required, the novelty and difficulty of the litigation, and the experience, reputation and ability of the attorneys. *Kelley v. Metropolitan County Bd. of Educ.*, 773 F.2d 677, 683 (6th Cir.1985), cert. denied 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). Although Attorney Isroff has a wealth of experience in copyright law, the Court finds that this case presented no complex or novel issues of law. As a consequence, the Court will reduce the hourly rate charged in this litigation to $350.00 per hour. See *Fharmacy Records v. Nassar,* 729 F.Supp.2d 865 (E.D.Mich. 2010)(reasonable rate for a partner level practitioner in intellectual property firm is $330.00). Attorney Isroff's billable hours in this case, 27.3 hours, at a rate of $350.00, would equal $9,555.00. Attorney Isroff also billed $396.00 for 2.1 hours of additional work performed by "ALR" and "RG", however he does not identify these individuals or their position with his firm. As a consequence, the Court declines to award these fees. Finally, the Isroff Declaration list $759.04 in costs. Therefore, the Court awards $10,314.04 in attorney's fees and costs in this case.

IV.     CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment, Dkt. #27, is GRANTED, Mr. Leyland's motion to dismiss, Dkt. #31, is DENIED, and Defendants' motion to withdraw admissions, ECF Dkt. # 33, is DENIED.

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is GRANTED against Defendants as follows:

(1) Defendants are permanently enjoined from further acts of infringement;

(2) Plaintiffs are awarded judgment for statutory damages in an amount of $18,000.00, plus interest from this date;

(3) Plaintiffs are awarded costs and attorney's fees in the amount of $10,314.04.

**IT IS SO ORDERED.**

Dated: November 21, 2012                              */s/ George J. Limbert*
                                                      **GEORGE J. LIMBERT**
                                                      **UNITED STATES MAGISTRATE JUDGE**